PITMAN, J.
|! Plaintiff, Lawrence Marie Brown, in proper person, filed a rule of eviction against her former brother-in-law, Defendant, Carl Brown, seeking his eviction from a home she owns with her former husband, Charles Brown (“Charles”). The trial judge rendered judgment in favor of Defendant. Plaintiff now appeals. For the following reasons, the judgment of the trial court is reversed.

FACTS

Plaintiff and Charles own a rent house located at 712 So. 11th Street, Monroe, Louisiana. Some years ago, Charles asked Plaintiff if his brother, Defendant, could occupy the house and help care for his ailing father who lived across the street from the house. Charles allegedly told Plaintiff that Defendant would pay him $300 per month rent and that Charles would give her half of that amount each month; however, Plaintiff never received *1243 any payments for rent. Defendant has lived in the house for years and the house is in a state of disrepair. Plaintiff went to the home and found as many as 11 people living in the two-bedroom dwelling. Plaintiff became dissatisfied with the situation and decided to evict Defendant from the home.
Plaintiff served Defendant with an eviction notice and then filed a rule to evict him from the home. Although Defendant was properly served with notice that the rule had been filed, he did not file an answer. A hearing was held in October 2012, at which Plaintiff, Defendant and Charles all testified.
Plaintiff testified that the property was rental property she owned with Charles and that the monthly rental rate was $300. She stated that |2Pefendant had moved in approximately seven years ago. There was no written lease, but there was a verbal agreement that Defendant would pay Charles $300 per month rent, and Charles was to give her $150 per month. She also testified that she never received a single rental payment, although she believed Defendant had paid rent for a year, but stopped paying after Charles wrecked Defendant’s truck.
Plaintiff further testified that, as her rule to evict alleged, only Defendant and his wife were to live in the home, yet she had found as many as 11 people living there. She stated that, in 2006, she gave Defendant the option to pay the rent or to repair the house because it was in such a state of disrepair it could have been condemned by the city. Defendant made no effort to repair the home. Plaintiff also testified that neighbors had informed her that Defendant was illegally getting electrical service by connecting a wire to the breaker box.
Defendant testified that he moved into the house at the request of his brother and that he had informed his brother at the time he moved in that he could not afford to pay any rent. He testified that there was never any agreement for him to pay $300 per month; and, in fact, he never paid any rent to his brother or to Plaintiff. He also testified that the house had always been in terrible condition and that his purpose for living there was to attempt to prevent others from vandalizing it. Defendant stated that he intended to repair the home, but did not have the money to do so, and Plaintiff did not give him enough time. He also stated that he had moved into the house in 2008, not seven years ago as Plaintiff had claimed. ^Defendant further testified that he wanted to move because he did not want to be in the middle of a disagreement between Plaintiff and Charles.
Charles testified that there was no agreement for Defendant to make a monthly rental payment of $300. Charles stated that Defendant had nowhere to live, so he allowed Defendant to move into the house. This was to be a short-term arrangement. However, as time passed, he simply allowed Defendant to stay in the home. Charles testified that his brother actually made two or three payments of $200. Charles denied that there was an agreement for him to give Plaintiff half of the rent, stating, “Well, it really, I mean really, it wasn’t an agreement but I wouldn’t mind letting her have it. I mean, she, you know. Like she’s bringing up in court.”
The trial court asked Plaintiff and Charles, as co-owners of the home, how long they were willing to give Defendant to vacate the premises. Defendant requested that the court postpone his eviction until March when his taxes would be paid and he would be in a better position financially to move. Plaintiff offered an alternative and stated that the three-bedroom home of *1244 Defendant’s deceased father was vacant and located across the street and he could move there immediately.
Without further evidence being adduced, the trial court stated:
Based upon the testimony that ... the Court has heard this morning, the Court, uh, is going to deny the rule in this matter as it does not believe that the Petitioner carried the burden, uh, that was required. All right. The Court, uh, will sign off on this, and if we’ll make sure that it’s a part of the record. All right.
Defendant asked: What do you mean? I mean ...
Plaintiff answered: You and Charles win.
| ¿The trial court’s judgment did not contain any explanation regarding Plaintiffs burden of proof or why that burden had not been met. Also, the written judgment signed by the trial court is very confusing. The language in the decretal portion indicates that judgment was rendered in Plaintiffs favor and against Defendant ordering him to vacate the premises. However, handwritten at the bottom of the judgment are the words “Dismissed/Lee.” The transcript and minutes both support this version of the judgment. Plaintiff has appealed this ruling.

DISCUSSION

Plaintiff claims that the trial court erred in failing to award a judgment of eviction in her favor and against Defendant ordering him to vacate the premises on South 11th Street.
Plaintiff argues that there are three essential elements to a landlord’s cause of action for eviction. These three elements are: 1) the relation of landlord and tenant between the parties, 2) the expiration or termination of the lease and 3) that due notice to vacate has been served upon the tenant as required by law. Plaintiff asserts that she made a prima facie showing by competent evidence that she was entitled to the relief she sought. She also argues that the testimony at the hearing showed there was a verbal agreement with Defendant detailing the amount of rent due per month and to whom it was to be paid. She argues that, by Charles’ own admission, Defendant made two or three payments of $200 to him; therefore, Defendant apparently was in agreement with the terms of the verbal lease, even though he failed to make with any further payments.
| .¡Plaintiff further argues that she is entitled to use summary process to evict Defendant. The record shows that she complied with the requirements of the Louisiana Code of Civil Procedure and provided Defendant with due notice to vacate. Defendant did not file any responsive pleadings or raise any affirmative defenses. For these reasons, Plaintiff argues that she was entitled to judgment in her favor ordering Defendant to immediately vacate the premises.
Defendant did not file an appellate brief and, apparently, is still living in the house rent free with Charles’ permission.
La. C.C.P. art. 4701 states in pertinent part as follows:
When a lessee’s right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.
*1245 If the lease has no definite term, the notice required by law for its termination shall be considered as a notice to vacate under this Article. If the lease has a definite term, notice to vacate may be given not more than thirty days before the expiration of the term.
La. C.C.P. art. 4702 concerns notice to occupants other than tenants to vacate and states as follows:
When an owner of immovable property wishes to evict the occupant therefrom, after the purpose of the occupancy has ceased, the owner, or his agent, shall first cause a written notice to vacate the property to be delivered to the occupant.
This notice shall allow the occupant five days from its delivery to vacate the premises.
|fiLa. C.C.P. art. 4731 concerns the rule to show cause why possession should not be delivered and states in pertinent part as follows:
A. If the lessee or occupant fails to comply with the notice to vacate required under this Title, or if the lessee has waived his right to notice to vacate by written waiver contained in the lease, and has lost his right of occupancy for any reason, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to deliver possession of the premises to the lessor or owner. The rule to show cause shall state the grounds upon which eviction is sought.
La. C.C.P. art. 4732 states that, if the court finds the lessor or owner entitled to the relief sought, or if the lessee or occupant fails to answer or to appear at the trial, the court shall render immediately a judgment of eviction ordering the lessee or occupant to deliver possession of the premises to the lessor or owner.
La. C.C. art. 805 states as follows:
A co-owner may freely lease, alienate, or encumber his share of the thing held in indivisión. The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivisión.
Since consent of all co-owners is required for the lease or encumbrance of the entire thing held in indivisión, Defendant is not entitled to remain in the home. By seeking the eviction of Defendant from her property, Plaintiff has shown that she no longer consents to his encumbrance of her property. Her only burden of proof was to show she owned the home in indivisión and that she no longer consented to Defendant’s possession of the thing. Plaintiff followed the proper |7procedures for evicting Defendant from her property and she is entitled to judgment in her favor.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and judgment is entered in favor of Plaintiff Lawrence Marie Brown, and against Defendant Carl Brown, and he is hereby ordered to immediately vacate the premises located at 712 S. 11th St., Monroe, Louisiana. Should Defendant fail to vacate the premises, a Writ of Possession shall issue forthwith directed to the Marshal of the Monroe City Court commanding him to eject Defendant Carl Brown from the premises and to deliver possession thereof to Plaintiff. Costs of this appeal are assessed to Defendant Carl Brown.
REVERSED AND RENDERED.